# Richmond.

Virginia Messick, an Infant, Etc. v. Jack Mason and Thomas Mason.

March 19, 1931.

Present, Prentis, C. J., and Campbell, Holt, Epes and Hudgins, JJ.

The opinion states the case.

*Frank Kearney* and *J. Winston Read,* for the plaintiff in error.

*Montague & Holt,* for the defendants in error.

Epes, J., delivered the opinion of the court.

Virginia Messick, an infant seven years old, brought her action of trespass on the case in the Circuit Court of Elizabeth City county against Jack Mason and Thomas Mason to recover $5,000.00 damages for injuries received by her when she was struck on October 26, 1927, by a Ford truck owned by Jack Mason, which was being driven by his son and agent, Thomas Mason, along the Kecoughtan road.

The evidence shows Virginia Messick was very seriously injured by this automobile. She was knocked down and badly bruised and received serious internal injuries. Her liver was ruptured and she developed a paralytic distention of the bowels as a result of the blow. She was in the hospital about a month, during which time she had to undergo two serious abdominal operations, in the second of which about six inches of her bowel had to be removed. She suffered intensely, and the physician who treated her says: "The child's condition was so very bad it was almost a hopeless case, very discouraging, but she did make a good recovery * * * and she has had a moderate degree of health ever since." At the time of the trial, December 17, 1928, it had been about nine months since she had required any medical treatment or attention on account of the injuries she received, and she was back at school doing well in her studies.

The jury returned a verdict of five hundred dollars ($500.00) in favor of the plaintiff against both defendants.

On motion of the defendants the court set aside the verdict on the ground that the evidence fails to establish any negligence upon the part of the defendants or either of them; and entered final judgment for the defendants. To the judgment Virginia Messick assigns error. The only question raised by the assignment of error is whether the evidence is sufficient

to support a verdict finding Thomas Mason, the driver of the car, guilty of negligence.

■ So far as it relates to the question of negligence and the circumstances surrounding the accident, the evidence introduced by the plaintiff is as follows:

On the afternoon of October 26, 1927, between 2 and 2:30 o'clock, Virginia Messick, then seven years old, was returning home from the Armstrong School, which is situated between the cities of Hampton and Newport News, in a truck used for the transportation of children to and from this school, which was driven by Quinby Collier. This truck, which we shall call the Collier truck, was traveling west (that is, toward Newport News) on the Kecoughtan road, the main highway between Hampton and Newport News; and the Mason car was traveling east (that is, toward Hampton).

The Collier truck had no sign or insignia on it to show or indicate that it was a school truck, or bus, or was being used for the transportation of school children; and there was nothing in the appearaance of the truck to indicate to a person seeing it on the road that it was a school truck or bus. The body was entirely closed at the back and on the sides by curtains which had no window or opening in them, except a small window in the back curtain. The sides and back of the body were covered with wire netting over which the curtains were drawn. At the front was a cab for the driver such as those with which trucks are commonly equipped. On the left side this cab had a long narrow window fitted with glass. On the right side it had a door with a glass window at the top of it, which was the only door to the truck.

The Collier truck had three seats in it for the children to sit on, one on each side and one down the center. It was practically filled with children, when it stopped at the point at which Virginia Messick was injured, most of whom were seated, but some of whom were standing up by the driver. This was the first stop the truck made after it left the school.

As the Collier truck approached the point at which Virginia Messick was injured, another school truck or bus, driven by J. A. Baines, which was transporting children from another school, the George Wythe School, was approaching that point from the opposite direction, going in an easterly direction towards Hampton.

When the Wythe School bus was about 100 yards from where the Collier truck stopped, a Ford truck, driven by Thomas Mason, overtook and passed the Wythe School bus. Mason's truck was then traveling approximately twenty-five to thirty miles an hour, and did not increase its speed materially, if at all, from there to where it struck Virginia Messick.

The Kecoughtan road is here straight for a long distance; the afternoon was clear; and there was nothing between the Wythe School bus and the Collier truck to prevent those in the Wythe School bus or Mason from seeing the Collier truck or anyone in the roadway who was not behind the Collier truck.

The Collier truck stopped on the right-hand side of the road, and some children, including Virginia Messick, got off. They all got out the door at the front, on the right-hand side of the truck. The evidence introduced by the plaintiff is not definite as to the number of children who got off, and does not show the order in which they got off; or, except as to Robert Wallace and Virginia Messick, what they did or where they went or were standing between the time they got off and the time Virginia was struck.

J. A. Baines, who was driving the Wythe School bus, says: "I reckon * * * there was two or three, four or five" children who got off that day at this stop, "they were right at the street where he stops." He does not testify, however, as to when in relation to the time of the accident these children got off, or whether he saw or could see any of the other children before he saw Virginia Messick or not. But he testifies positively that he did not see Virginia Messick until she had

come around from behind the Collier truck and was out in the road beyond the Collier truck.

Carroll Todd, a school boy riding in the Wythe bus and standing up beside Baines, the driver, testifies that he noticed Mason's car when it passed the Wythe bus; that he had a clear view in front; that he saw the Mason car strike Virginia Messick, and that as soon as the accident happened he got off the Wythe bus and ran down to where the accident occurred. He says that "about six or eight" children got off the Collier bus, but his testimony cannot be said to be that he saw any of the other children until either just at the time or a little after he saw Virginia; and his testimony is very positive that he did not see Virginia until just a moment before she was struck, practically just as she was struck.

Among the children who got off the Collier truck was Robert Wallace, aged twelve. He did not see Virginia get off or after she got off until after she had been struck; and does not know whether she got off before or after he did. He says: "I got off and walked straight down the road, on the same side, the right-hand side;" and had gone about "fifteen or twenty feet up the road" when I "heard the brakes screak and heard her (Virginia) scream." He estimates that when the Mason truck passed him it was going "about twenty-five miles an hour."

When Virginia got off the Collier truck she passed along the right side of the Collier truck to the back of the truck, around behind the truck, and on across the road toward the opposite side. When she was "pretty well across the road," the right front fender of the Mason truck struck her.

In reply to the question: "Did she (Virginia) run or walk across the highway?" Baines, who had testified that he did not see her until she came out from behind the Collier truck into the road, says: "I think she was walking." This is all of his testimony on this point and the only testimony in the

record even tending to show that Virginia was walking when she was going across the road.

Mason put on his brakes before he hit the child, and went less than two car lengths after he put on his brakes before he brought his car to a stop. Baines says: "He stopped his car that quick that the child was pretty close to the rear wheels when Mr. Collier picked it up."

The only evidence introduced by the plaintiff as to what Thomas Mason actually saw as he approached the point of the injury is the following:

"Q. Did he (Thomas Mason) make any statement to you as to whether he did or did not see the bus standing ahead of him on the road?

"A. He said he saw it was a bus. He told me he knew it was the bus. He told me that two weeks ago."

Virginia herself recalls nothing about getting off the truck or being injured. She testifies that the last thing she remembers she was sitting in the truck.

The evidence introduced by the plaintiff leaves it merely conjectural as to whether the defendants were negligent or not. The facts and circumstances proved by it are not such that they can be said to point by a fair and reasonable inference to the conclusion that the defendants *were* negligent. The most that can be said of it is, that under the facts and circumstances proven the driver of Mason's truck *may* have been guilty of negligence.

We turn now to the evidence introduced by the five witnesses introduced by the defendants, which makes it plain that the defendants were not guilty of negligence.

The testimony of Collier, the driver of the truck in which Virginia was riding, casts no additional light on this subject other than that he was in the driver's seat on the left-hand side of the truck, and would have been the person in the truck most visible to one approaching from the opposite direction.

Miss Mildred Schott, seventeen years old, a high school

student, who was riding in the Collier bus, testifies: "Virginia Messick was the first one to get off the Collier truck when it stopped. I was the second. Virginia got off and 'ran' to the rear of the truck and behind the truck, going across the road. She did not stop, she went right on. When I saw her go behind the truck she was running. I could not see her after she got behind the truck and do not know what she did after she went out of my sight. I did not see Mr. Mason's car before he struck her and did not see her struck. I came out behind her and I had just stepped on the ground and had turned around when I heard this noise, the squeaking of the brakes on Mr. Mason's car."

William Purrell, a school boy, age not given, had come from the George Wythe School on an earlier bus and was standing at the corner of Mr. Andrews' lawn, which places him an unidentified distance to the rear and to the right of the Collier bus as it stood discharging its passengers. He saw the truck stop, but turned and walked on and did not see any of the children get off. He says: "My attention was attracted by hearing the car slam on the brakes, and I turned to see what was wrong, and then for the first time I saw her. When Mason slammed on the brakes he was just about a car length from Virginia. She was going towards the south side of the road, was pretty near over to the south side of the road, when she was struck, and she was running at the time. About the time I turned I could see she was running, but no sooner than I looked she was hit."

Thomas Mason, who was driving the Mason truck, testifies: "When I drove up behind the Wythe School bus I speeded up to about twenty-five miles an hour to pass it, and then dropped back to from eighteen to twenty miles an hour. After I passed the Wythe bus I was driving to the right side of the center of the road, and was looking on the right side, in front of me. I did not see the Collier truck until I was about four or five car lengths from it. When I first noticed it, the truck

had stopped and was parked on the side of the road. I did not see any children get off the truck or on the road. The first child I saw was Virginia Messick. I did not notice the left side of the road on the other side of the Collier truck. I did not know what kind of a truck this was. It looked like and I thought it was just an ordinary truck. I did not know it was a school bus and there was no sign on the truck or anything else to indicate it was a school truck. It was smaller than the ordinary school truck such as I pass every day. I saw that there was more than one person in the front part of the truck; but I did not see any children inside or outside the truck. I have examined the truck since the accident. The door is on the right front side and opens from the rear and spreads out in front. It is a wooden door with a small glass window at the top. After I saw the truck I blew my horn as a precaution, though I did not see anyone and had no reason to believe that there was anyone behind the truck. The first time I saw Virginia Messick she was coming from the rear of the truck when she left the side of it, and ran across the road. I was then less than a car length from her. I slammed my brakes on with all my might, was all I could do. My brakes were in good order and I stopped within a car length."

The testimony of Jack Mason, who was sitting on the right-hand side of the front seat of the Mason car, is to the same effect as that of Thomas Mason. He is specific in his testimony that he saw the truck, but did not see anything to show that it was a school truck; that he saw no children about it or in the road; that his son Thomas, who was driving, blew his horn when he saw the Collier truck; that the first child he saw was Virginia Messick; that he did not see her until the Mason car was within a car length of the back of the Collier truck, and "she came running from behind it (the Collier truck) right into us;" that just as soon as he saw

Virginia run out from behind the Collier truck, Thomas Mason put the brakes on and stopped within a car length.

The uncontradicted evidence is that the Collier truck was not standing in front of a dwelling and that there were no houses near where it was standing.

The evidence conclusively shows that there was nothing about this truck to warn or put the defendants on notice that it was a school truck or was transporting children; and unless the defendants saw or in the exercise of a reasonable lookout should have seen that there were young children getting off or about the truck, the testimony shows that they were driving with due care and were guilty of no negligence.

When the driver of an automobile on the public highway does not see children in or near the roadway in such a position that their childish impulses may reasonably be expected to place them in danger from passing automobiles, and there are no special facts or circumstances known to the driver, or which ought to be known to him in the exercise of a reasonable lookout, which would put an ordinarily prudent man on notice that children are, or are reasonably to be expected to be, in or near the roadway at a particular place, the driver is not chargeable with negligence merely because he does not anticipate that a child will or may step, or run out, into the road at that place in front of his automobile, and does not decrease his speed or increase his vigilance and care accordingly. In such a case, until he sees or ought to have seen the child, his permissible speed is no less, and the degree of care and vigilance owed by him is no greater in a case in which a child is involved than in a case in which an adult is involved.

The uncontradicted evidence is that Virginia Messick was the first child to get off the bus; that she immediately started running along the side of the truck towards its rear, and then ran around behind the truck. None of the evidence places her or any other child (except possibly Robert Wallace) in a position such that she or they were not, for all

practical purposes, effectively screened from the view of the Masons by the closely curtained truck and the open door of the truck, until Virginia emerged from behind the truck, at which time the Mason truck was within a car length of her.

■ The only child to get off this truck which any evidence places in such a position that a person approaching from the west and keeping a reasonable lookout would probably have seen before Virginia was struck, was Robert Wallace, who testifies that he had walked from fifteen to twenty feet down the road after he got off of the truck, when he heard the brakes screech and Virginia scream. Both the defendants testify that, though they saw the truck, they did not see this boy. But even if they had seen this single twelve-year-old boy get out of the standing truck and start walking west along the edge of the road in a place of safety, this would not have been sufficient to charge the defendants with notice that this truck carried other children, and to fix upon the defendants the duty to anticipate that another child or other children had gotten, or would get, out of the truck, and perhaps try to cross the roadway in the rear of the standing truck, or render driving at a speed of from twenty-five to thirty miles an hour at that place negligence *per se*.

It is stated in defendant in error's brief, and not denied by the plaintiff in error, that the concrete road at the point in question is eighteen feet wide. If this be true, it would appear that the distance from where Virginia emerged from the rear of the Collier truck to where she must have been in the path of the oncoming car was six feet or less, and to where she was struck from ten to twelve feet, or less. But we do not find that the evidence gives the width of the road at this point or indicates in feet the distance between the Collier and the Mason truck as the latter passed the former. But, however this may be, the evidence shows that the distance was very short, for Virginia was struck in just a moment after she emerged from behind the Collier truck.

While Baines testifies that he "thinks" she was walking when she was going across the road, he does not state positively that she was walking; and this is the only evidence even tending to show that she did not run from behind the Collier truck and across the road in front of Mason's truck. On the other hand, the positive testimony and the uncontradicted facts and circumstances make the conclusion irresistible that she did run from behind the Collier truck and across the road in front of Mason's car; that Mason saw her as soon as she emerged from behind the Collier truck, at once applied his brakes effectively, and did all that was then required of him in an attempt to prevent injuring her.

*Price* v. *Burton,* 155 Va. 229, 154 S. E. 499; *Ball* v. *Witten,* 155 Va. 40, 154 S. E. 549; and *Thress* v. *Hackler,* 155 Va. 389, 154 S. E. 502, upon which the plaintiff in error relies are all clearly distinguishable from the case at bar.

The action of the court in setting aside the verdict and entering judgment for the defendants in error was plainly right.

*Affirmed.*