**NUGENT et ux. v. NORTHCUTT et al.**

**No. 14608.**

Court of Civil Appeals of Texas. Dallas.

March 6, 1953.

Rehearing Denied April 10, 1953.

John F. Harrison and J. Alex Blakeley, both of Dallas, for appellants.

Leachman, Matthews & Gardere and Fred Porter, all of Dallas, for appellees.

CRAMER, Justice.

This is an action for damages growing out of the death of appellants' fourteen-months-old child, Carol Nugent. Northcutt, a route foreman for Metzger Dairies, was delivering milk in place of the regular route man on one of the routes under his supervision. The Crouches were regular customers of the Dairy and had recently moved into the neighborhood. They were the last customers on their new street. They had moved there from a home on another route under Northcutt's supervision, and were acquainted with Northcutt. The Nugent home was two doors north of the Crouch home. Northcutt drove his truck into the Crouch driveway and along the side of the house, stopping at the back door. When he placed the milk in the refrigerator, Mrs. Crouch asked him to have a cup of coffee, and being interested in her new home, she asked him if he would like to look through the house. After Mrs. Crouch showed Northcutt through the home, he left the house, looked down the driveway between the house and the truck, saw no children, the driveway was clear. He then

entered at the right door of the cab. He kept a lookout along the left side of the truck and out on the driveway as he backed into the street; then left the site in the opposite direction from which he originally came. He testified that he neither saw nor heard anything to indicate or inform him that anything unusual happened as he backed from the back door along the driveway to the street and drove off. The record contains a picture of the truck in question and a diagram of the site of the accident showing location of the Crouch and Nugent homes. They are as follows:

NORTH

Property Lines

60'-0" 60'-0" 60'-0"

NUGENT CROUCH

Clothes Line

Gravel Drives & Concrete Curbs

PLAINTIFFS EX. S.S.

18'-0" 30'-0" 12'-0"

24'-0"

436 (Now 602)

10'-0"

Property Lines

522

Tig Line Ditch

SCALE: APPROX 1" = 30'-0"

ELIZABETH STREET (Now - NORTHEAST 33rd.)

A few minutes after Northcutt left the Crouch home, Mrs. Crouch heard a scream from the front of her house, ran out and saw Mrs. Nugent, mother of the deceased child, take the child in her arms and run towards her own home; thereafter learned that the child was found dead by the mother on the driveway at the point marked with a cross on the diagram above. The dead child, when examined, was found to have suffered a fractured skull and a number of broken bones in her body.

Appellants' petition asserted five grounds of negligence: The first three being, (a) driving into a private driveway with a truck of such size and shape as to prevent its driver from keeping a proper lookout when backing; (b) failing to ascertain whether children were in fact present on the driveway before entering and backing the truck therefrom; (c) backing from a private driveway without keeping a proper lookout for children likely to be playing thereabouts. Appellees excepted to said allegations on the ground that they were repetitious of each other, prejudicial, and were but elements of failure to keep a proper lookout. The court on the pretrial sustained the objections, and after exception thereto appellants filed a trial amendment omitting the above three paragraphs, substituting therefor the following: (a) "Failure to keep a proper lookout." In the trial amendment appellants also plead (b) "Failure to sound the horn on the truck. (c) Metzger's Dairies, Inc., was negligent in providing a truck of such design as to obstruct the rear view of the driver (d) Metzger's Dairies, Inc., was negligent in providing a truck without a rear window. (e) John B. Northcutt backed the truck from the driveway without first ascertaining whether children were present behind the truck."

On the trial of the case the jury answered all negligence issues submitted (with the exception of issues 6, 6a, and 6b) in favor of Northcutt and the Dairy and against the Nugents. To issues 6, 6a, and 6b, the jury found, in substance, that Metzger Dairies furnished a truck of such design as to obstruct the rear view of its

driver, which was negligence, and a proximate cause of the child's death. The trial court overruled the Nugents' motion for judgment on the jury's findings to issues 6, 6a, and 6b; sustained the Dairy's motion for judgment n. o. v., and entered a take nothing judgment against the Nugents.

The Nugents have duly perfected this appeal and assign four points of error, in substance: (1) Error in striking their allegations that the driver was negligent in driving the particular truck into a private driveway since its construction prevented the driver from keeping a proper lookout; (2) in holding that in so driving the truck into the driveway, could not be negligence; (3) in holding "There was no support in the evidence for the jury's finding that a proximate cause of the death of Carol Grace Nugent was the negligence of Metzger Dairies in providing a truck of such design as to obstruct the rear view of the driver"; and (4) in overruling their motion for judgment against Metzger Dairies, Inc., on the verdict of the jury.

Appellees answer, in substance: (1) Appellants waived the error, if any, in the sustaining of their special exception by the filing of the trial amendment; (2) that paragraphs a, b, and c, stricken out of the original petition by the court, did not contain controlling issues, but were repetitious of proper lookout and gave undue prominence to the alleged failure to keep proper lookout; (3) there being no evidence to establish with reasonable certainty how the accident occurred, or as to how the design of Metzger's truck could be a proximate cause of the child's death, the court properly ignored issues 6, 6a, and 6b, in entering judgment; (4) appellees were entitled to an instructed verdict and therefore there was no error in entering judgment in disregard of issues 6, 6a, and 6b; and (5) such issues were but a mere evidentiary inquiry on the ultimate issue of proper lookout, and judgment notwithstanding such findings was not error.

Appellants brief points 1 and 2 together, and we will so consider them.

The evidence material to points 1 and 2 shows the truck in question to be larger

and more cumbersome than the ordinary retail truck, and so constructed that the driver's rear view was limited to what he could see when leaning out and looking back along the left side of the truck. (See picture of truck above.) The evidence is uncontroverted that the child was found lying with its head in a large blood spot on the ground near north. curb on the driveway. The child's condition did not indicate that she had been run over, but the body was lying in such a way as to indicate that she was knocked down on the driveway by some part on the underside of the body of the truck.

The evidence shows the child, a few minutes before the accident, was left by her mother in her own back yard two doors north of the Crouch home, in charge of her older sister; that thereafter she left her sister, and her movements from then on were unknown to the witnesses who testified.

Under such evidence the exact manner in which the accident occurred is not known. The testimony and exhibits indicate that the accident could have happened with the child standing in the driveway, or moving in either direction across the driveway. There is no evidence as to whether the child was standing, running, or walking, and the record is blank except for the physical facts above stated. The truck driver testified that he kept a lookout along the left side of his truck and did not see the child either before or after the accident. After leaving the driveway he drove off without knowledge of the child's death, and did not learn of same until some hours later when he was informed about it while making deliveries on another route.

 Being an interested witness, Northcutt's testimony was for the jury to believe or disbelieve, based on the entire record. The jury by their answers indicated they did believe him. But assuming the jury disbelieved the witness, there is no other evidence in the record to show how the child met her death; and without evidence of probative value sufficient to meet the test of certainty as to how the accident occurred, no question of fact is made for

the jury. The burden of such proof was on the Nugents, and without it they are not entitled to recover.

Under the evidence here we are of the opinion that the holding in Pritchard v. Henry, Tex.Civ.App., 200 S.W.2d 651, 652, (ref. n. r. e.), is in point. In that case the defendant saw children playing on the sidewalk in places of safety before he started to back, and looked out along the side of the car and behind him within his vision in such position; he saw nothing of the child or her movements before the accident. The court there held that the defendant in the exercise of ordinary care did all that an ordinarily prudent person would have done in keeping a proper lookout, and held there was no issue for the jury in the case. In that case it was also disclosed that the driver of the car saw children on a porch next door, and the presumption was that the child who was killed came from that porch in a direction which the driver could not see in looking back in the manner he did at the time he backed out of the driveway. The court there stated (directly in point here):

."He watched on the left side as he backed out. He did not sound his horn, nor did he look to the right. It occurs to us that the sounding of the horn would have done no good, so far as this thirteen-months-old baby was concerned. The baby had, it seems, passed back of the car and was struck by the rear left wheel. Neither do we think appellee was negligent in not again looking to his right after he had been around his car and observed that his driveway was clear. It is certain that he could not watch both the right side and the left side at the same time. It was perfectly natural for him to have watched the left side, which was the side on which he was seated. If he had looked through the glass window in the rear of his car he could not have seen the child, as this window was four feet above the ground and the child was not nearly that tall. As he backed he could watch the four children on the sidewalk in front of

his house, and the children on the Brown porch were in a place of safety. The evidence does not show where the child which was driven over came from, but it is suggested that she was one of the children on the Brown porch, and that she had left the Brown porch and started to where the four children were on the sidewalk in front of appellee's house, and had almost cleared the rear of appellee's car when he began to back and struck her. Appellee was called to the witness stand by appellant and questioned as to how the accident occurred. He told a very frank and straightforward story as to just how it happened. There is no other evidence in the record as to how the accident occurred. If appellee has not told the truth as to how it occurred then we have no evidence as to this matter. The burden of proof was upon appellant to show by a preponderance of the evidence that the child was injured and killed as the proximate result of negligence on the part of appellee. This he has not done. * * * Appellee had no knowledge of the perilous position of the child, and in the absence of such knowledge he used all the care that could have been expected of an ordinarily prudent person."

The court sustained a motion for instructed verdict against Pritchard in that case. Under that authority we must here hold that since there is no evidence sufficient to raise the issue of negligence and proximate cause, there was no issue thereon and the exception was properly sustained. Under such holding it is not necessary that we pass on the question of waiver of the error, if any, asserted by the appellees. Points 1 and 2 are overruled.

What we have said in connection with points 1 and 2 is applicable to points 3 and 4. Points 3 and 4 raise the question of negligence by Metzger Dairies in furnishing its driver, Northcutt, the type of truck used at the time for the making of retail deliveries. A truck with an opening or window in the rear would not have been material in preventing the happening of the accident under the circumstances shown in the evidence here. The driver here did everything the driver did in the Pritchard case. There was, therefore, no jury question raised by the evidence. Points 3 and 4 are overruled.

Finding no reversible error shown by appellants' points, the judgment below is affirmed.