**W. E. STYLES, dba W. E. Styles Oil Company, Appellant,**

v.

**Marvin D. EBLEN and Wallace C. Eblen, Appellees.**

Court of Appeals of Kentucky.

Jan. 24, 1969.

Gross C. Lindsay, Henderson, for appellant.

Leonard T. Mitchell, Mitchell & Withers, Henderson, for appellees.

OSBORNE, Judge.

On December 24 or 25, 1965, 114 hogs belonging to Marvin D. Eblen and Wallace C. Eblen, appellees, were electrocuted when an electrical line constructed and maintained by W. E. Styles, appellant, was knocked down by a partially dead tree which fell during a period of high winds. Styles held an oil lease on the property where the incident occurred and was conducting a secondary oil recovery operation in the area under various leases and a unitization agreement. The Eblens were agricultural lessees on the particular tract of land where the hogs were electrocuted. The owner of the land had signed the unitization agreement as had the Eblens who were owners of another farm. The secondary recovery operation involved pumping water into certain wells to force the re-

maining oil to pool. Styles had erected electrical lines to operate the necessary pumps. The pumps attached to the lines which electrocuted the hogs had not been utilized in the recovery operation for a period of approximately two years and sometime during that period of time the pumps had been partially dismantled and the electrical lines disconnected at the pumps. However, although the power supplied by these lines was no longer being used, the lines had been left connected and were still energized at the time the hogs were electrocuted.

The energized lines were knocked down by one side of a double sycamore. According to the Eblens this part of the tree had been dead for some time. The tree fell during a period of high winds, with gusts of up to fifty miles an hour. The jury returned a verdict for the Eblens in the amount of $6000 for the loss of the hogs.

Appellant's primary contention is that the trial court should have granted a peremptory instruction because there was insufficient evidence of negligence in the construction, maintenance and operation of the lines to raise a jury question. In addition, he argues that the appellees were contributorily negligent as a matter of law and that certain instructions were erroneous. We shall deal with these issues in this order.

■ The lines in question extend from a tee near the property line for an undisclosed distance to the pumps in question. They had not been in use for a period of two years. Evidence shows that it would have taken only five minutes to disconnect them at the tee. The lines carried 480 volts of electrical current which is sufficient when brought into contact with man or beast to cause serious injury or death. It is common knowledge that such lines are susceptible to wind and storm.

■ It is horn book law that the reasonableness of any conduct must be judged by the circumstances of the case. Where the necessity and utility of maintaining such lines are important, where the lines serve a useful function and are carefully constructed, the inherent danger is weighed against the social utility of their maintenance and there is no negligence. But when the utility of the instrumentality is extremely low and when the risk involved is so much greater, as is the case here, then further maintenance of the instrumentality constitutes negligent conduct. Restatement (Second), Torts § 291 states the rule to be:

"Where an act is one which a reasonable man would recognize as involving a risk of harm to another, the risk is unreasonable and the act is negligent if the risk is of such magnitude as to outweigh what the law regards as the utility of the act or of the particular manner in which it is done."

The principle is aptly summarized by asking the question, "Is the game worth the candle?" We have many times recognized that this is the basic question to be determined in deciding whether a particular act involves an unreasonable risk. Commonwealth, Department of Highways v. Begley, Ky., 376 S.W.2d 295; Hettich's Adm'r v. Mellwood Dairy, Ky., 278 S.W.2d 717. It is our opinion that maintenance of highly-energized, uninsulated, electrical wires for a substantial period after their utility has ceased when there was no plan to place them in immediate reuse, and when the time and effort necessary to disconnect them would be insignificant compared to the risk involved to the general public constituted negligence. We believe this principle to be sound notwithstanding the action of the Court of Civil Appeals of Texas in Shell Oil Co. v. Mahler (Tex. Civ.App.) 385 S.W.2d 684.

■ As to appellant's second contention that appellees were guilty of contributory negligence as a matter of law, in that they were aware of the dead tree and failed to warn appellant as to its danger, we are of the opinion that this issue was properly presented to the jury. They testified that they did not so warn him because they be-

lieved the lines had been disconnected. We do not believe that such an assumption was inherently unreasonable. We also find no error in the instruction on this point. The instruction followed the evidence presented and properly presented the question of fact to be decided, whether the Eblens really believed the line to be disconnected, to the jury.

Since we have concluded that Styles was negligent as a matter of law, there is no need to discuss alleged errors in the instructions on negligence.

Judgment affirmed.

All concur, except PALMORE, J., who was not sitting.